STATE of Missouri, Respondent,

v.

Charles ARRINGTON, Appellant.

No. 49965.

Supreme Court of Missouri,

Division No. 1.

Feb. 10, 1964.

———◆———

Charles Arrington, pro se.

Thomas F. Eagleton, Atty. Gen., Jefferson City, George D. Chopin, Sp. Asst. Atty. Gen., St. Louis, for respondent.

COIL, Commissioner.

Charles Arrington was convicted of rape by forcibly ravishing a woman over the age of sixteen. See Section 559.260, RSMo. 1959 and V.A.M.S. The jury fixed his punishment at forty years in the state penitentiary. He appealed but has filed no brief. We shall examine the assignments of error in his motion for new trial.

There is no contention that the evidence was not sufficient to make a submissible case. Consequently, a brief statement of the facts giving rise to the charge will suffice.

On the night of May 5, 1962, a medical student escorted a young lady to a party given in honor of one of the nurses from the school. At the conclusion of the party, about midnight, they drove to the young lady's home in south St. Louis, where she changed from her formal attire and she intended to then drive her escort (the car was hers) to Barnes Hospital. They traveled north on Jefferson and stopped at Chouteau because of a red traffic signal. A man approached the driver's side with a gun (the student was driving), forced his way into the car, drove it left on Chouteau, west one block, then, by two left turns, into an alley. As the car entered the alley another man, the defendant, ran toward the car. Thereafter, the defendant and his companion searched the student and the young lady and took what money and valuables they found. The defendant and his companion then each forcibly ravished the young lady while the other forced her escort at gunpoint to lie facedown on the front seat. Both the student and the young lady positively identified defendant two days later at a police station and again at the trial. The state's evidence showed that defendant orally and in writing admitted his guilt.

New trial assignment 5 complains that the trial court erred in not granting defendant a continuance. The record shows that on the morning of the trial, in chambers, defendant's counsel requested that the case be continued until the first of the following year on the ground that recent publicity concerning a brutal rape and murder involving (as did the present case) a white woman and colored men, which had occurred during the prior week, had been so widespread and extensive that it was impossible for this

defendant to receive a fair trial. The court overruled the motion. At one of the adjournments during voir dire examination of prospective jurors, defendant's counsel again moved for a continuance for the reasons previously stated and asked that a copy of a St. Louis paper, containing a front-page article concerning the persons who had allegedly committed the other crime, be made a part of the court file. The court overruled that motion. After the jury had been selected and impaneled, defendant's counsel renewed his motion for continuance and had another newspaper marked as a defendant's exhibit and called attention to the front-page headline: "No penalty severe enough, Three women identify * * * as attacker," and thereafter a long article some of which was quoted into the record. Again defendant's counsel urged a continuance on the ground that his client could not receive a fair trial. Again the court overruled his motion. The next morning, before the jury was sworn, the court asked the members of the panel "whether anything that you might have read in the newspapers, or heard on the radio or television has, in any way, influenced you." There was no answer and the court stated he took that to mean that the answer of each was in the negative. Whereupon the jury was sworn and the trial proceeded.

■ While portions of the examinations of prospective jurors are contained in the record, there is nothing which shows or purports to show that any question was asked the panel members which was designed to inquire into their knowledge concerning or the effect upon them of the publicity in connection with the other rape case, other than the general question asked by the trial court. While the newspapers that were marked are not before us, we nevertheless do know that there was publicity concerning the rape and murder in St. Louis to which defendant's counsel referred. The fact is, however, that there is no showing in this record which tends to indicate that the jury selected in this case could not, solely by reason of the publicity

in the other case, assuming, because it was not shown, that they were aware of it, give this defendant a fair trial. Certainly, there is nothing in the record to indicate to us that this defendant was automatically prejudiced simply because of publicity in the other case; nor is the conclusion apparent that a fair trial for this defendant was not possible. Under the circumstances we may not say that the trial court abused its discretion in refusing to grant the thrice-sought continuance. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 111–113.

■ Assignment 35 charges that the trial court erred in failing to grant defendant a continuance, pursuant to his request made on the morning of trial, on the ground that the state had been permitted to endorse the names of two additional witnesses on the indictment four days prior to the trial date, thereby allegedly preventing defendant "from preparing a complete and adequate defense." The record shows that on December 6, four days before the trial which began on Monday, December 10, the names of a police officer and of a police laboratory serologist were endorsed on the indictment. In chambers prior to trial counsel moved for a continuance stating that he had received the memorandum indicating that the two additional witnesses had been endorsed on the preceding Friday and requested a continuance on the ground of surprise, claiming that no witness from the laboratory had theretofore been endorsed and that her name threw "a completely different light on the case * * *." Criminal Rule 24.17, V.A.M.R., provides that the names of additional witnesses may be added at any time on court order and after notice to defendant or his attorney. Defendant's attorney had notice in this case, and the state's attorney offered to produce the witnesses for depositions and stated that the serologist would testify that there was seminal fluid on certain clothing of the victim and that the police officer would testify that he found certain items in the automobile in which the alleged rape occurred.

Neither defendant's motion at the time nor his motion for new trial suggested or demonstrated a sufficient cause for a continuance, and the trial court did not abuse its discretion in denying defendant's request. There is no showing and it is not otherwise apparent that the testimony of either or both witnesses cast the case in a different light or that the endorsement of the names prevented defendant from preparing a defense. "An application for a continuance in a criminal case is addressed to the sound discretion of the trial court, and the appellate courts will not interfere unless it clearly appears that such discretion has been abused. State v. Le Beau, Mo.Sup., 306 S.W.2d 482 [5]; State v. Ward, 337 Mo. 425, 85 S.W.2d 1 [1]." State v. Scott, Mo., 338 S.W.2d 873, 876 [4–6].

■ Assignment 6 charges that the trial court erred in not declaring a requested mistrial when the state's attorney said during the voir dire examination of a jury panel that "he knew that the defendant * * * was guilty." The record shows that defendant's counsel asked a prospective juror whether the fact that defendant had been confined in the city jail since May—whereupon state's counsel objected on the ground that the question was irrelevant and was asked "merely as a plea of mercy." The court sustained the objection, whereupon defendant's counsel objected to the "statement about mercy," and said, "There is no mercy; this man is innocent, as far as I am concerned." The court then began a statement addressed to defendant's counsel, which the prosecutor interrupted and said, "He is guilty, as far as I am concerned." Thereafter, the trial court sustained defendant's objection to the "plea of mercy" statement, after which there was a colloquy among court and counsel out of the hearing of the jury, during which defendant's attorney moved for a mistrial because of the prosecutor's statement as to his belief that defendant was guilty. Thereafter, the court directed the jury to disregard the remarks of both lawyers as to their respective beliefs that

defendant was innocent and guilty, and not to consider those remarks at any time nor consider any other opinions of counsel. While it is, of course, improper for a state's attorney to express his opinion as to the guilt of a defendant, aside from the fact that the statement in this case was immediately retaliatory, the trial court's prompt action shows clearly the justification for the denial of defendant's request for a mistrial. State v. Warren, Mo., 320 S.W.2d 575.

■ Assignment 7 is that the trial court erred in not granting a mistrial for the reason that the state's attorney in his opening statement said that defendant was a friend of one Arthur Dugger and that Dugger's wallet had been found in the automobile in which the rape had occurred. The record shows that defendant's own testimony showed his friendship with Dugger and the state's evidence showed that Dugger's billfold was found in the automobile and that Dugger was a participant in the alleged crime. It is apparent, therefore, that the trial court did not err as charged.

■ Assignment 9 complains that the trial court erred in not permitting defendant's attorney to say in his opening statement that the testimony would show that defendant was innocent. The record shows that defendant's counsel began his statement by saying that he would show three things: first, that the defendant "is innocent of this charge—* * * This will be the testimony—." An objection was made and correctly sustained on the ground that the statement was argumentative. Defendant asserts (assignment 10) that the trial court erred in preventing counsel from setting forth in his opening statement the substance of defendant's testimony with respect to a statement that was taken from defendant following his arrest. The record shows that defense counsel said, "You will be then shown testimony that this statement, this alleged statement [apparently referring to the written question and answer statement made by defendant], is a fraud and a

disgrace to the better—* * * portion of our police department." The court correctly sustained an objection to that statement. It was argumentative and it was essentially conclusory.

■ Assignment 23, in so far as it is sufficiently specific, complains that the trial court erroneously permitted a witness to testify whose name had not been endorsed on the indictment. The witness in question identified city hospital records, testified as to the manner of their preparation and answered certain questions as to the contents of those records which she had in her possession. Criminal Rule 24.17 provides that it is unnecessary to endorse the name of a person who appears "for the production or identification of public records." See State v. Brooks, Mo., 360 S.W.2d 622, 626 [5].

Assignments 12, 15, 16, and 30 complain that the trial court erred in limiting defendant's cross-examination of various witnesses in specified instances.

■ Assignment 12 pertains to the cross-examination of the prosecuting witness with respect to her description of her assailants. We have examined that portion of the record and it does not support the complaint that counsel's cross-examination was unduly limited. Certain objections were sustained to the form of questions or because they were repetitious, but counsel was not prevented from making full inquiry with respect to the description of her assailants which the prosecuting witness had given the police.

Assignment 15 pertains to the cross-examination of the medical student and particularly to that part designed to show that there were contradictions between the testimony of the victim on the witness stand and what she had told the police. This assignment fails to complain of any particular ruling by the court, and our examination of the part of the record in question convinces us that the trial court did not unduly limit defendant's cross-examination of the witness in the respect charged.

■ Assignment 16 pertains to the cross-examination of a police officer "regarding statements made to him by [the victim] * * *, relative to the searching of the glove compartment in the car in which the alleged rape took place." Again no complaint is made of any particular ruling by the court and we have read the cross-examination referred to and it does not indicate any undue limitation thereof.

Assignment 30 pertains to the cross-examination of another police officer and avers that the trial court erred in not permitting defendant's counsel "to cross-examine Sergeant Roth as to specific portions" of the written question and answer statement made by defendant to a state's attorney. In the state's case the statement was marked as an exhibit but had not been offered in evidence. There was an attempt by defendant's counsel either to have the entire statement read to the jury or to be permitted to ask questions concerning specific portions thereof. We are unable to determine from the record whether counsel made plain to the court what his exact contention was or whether the court in fact denied defendant's counsel the right to cross-examine as to specific portions of the statement. But it seems plain that defendant's counsel's ultimate purpose was to make certain that the jury became aware of the contents of that statement. The record shows that the entire question and answer statement, state's exhibit 11, was read to the jury. Thus, defendant's counsel's avowed purpose was accomplished and no prejudice could have resulted to defendant from any specific ruling the court made prohibiting specific questions designed to show the contents of the statement.

■ Assignments 13, 18, and 22 allege that the court erred in permitting "undergarments" of the prosecuting witness to be identified and observed by the jury on the ground that the appearance of the clothing because of blood thereon would tend to inflame the jury to the unnecessary prejudice of the defendant. The record shows

that a pair of panties was marked as state's exhibit 2 and identified by the prosecuting witness as an undergarment she was wearing at the time of the occurrence in question. At a later time the exhibit was shown to a police officer who testified that he obtained it from a nurse at the city hospital after he had taken the prosecuting witness there and that he had marked the article and sent it to a police laboratory. A serologist employed by the St. Louis Police Department laboratory testified that she had examined the exhibit and found seminal fluid on it. Apparently the panties were extensively bloodstained and apparently the exhibit was observed by the jury on the three occasions mentioned. The evidence showed that after defendant and his companion had fled from the scene of the crime, the prosecuting witness and her escort immediately went to a nearby gas station from which they called the police; that the call was answered promptly by officers who conducted an investigation of the automobile and the surrounding area; that one of those officers escorted the prosecuting witness to the city hospital and that a nurse who there cared for the witness handed the exhibit in question to the officer who, as noted, sent it to the laboratory.

The exhibit was admissible if it tended to throw any light upon a material issue in the case. The fact that the undergarment showed the presence thereon of seminal fluid was some evidence tending to corroborate the testimony of the prosecuting witness and her escort with respect to the acts of defendant and his accomplice on the occasion in question. Consequently, the question whether the exhibit should have been admitted was one which was within the discretion of the trial court and, based upon this record, we may not say that the court abused its discretion in admitting the exhibit and the evidence identifying it. See State v. Swinburne, Mo., 324 S.W.2d 746, 752 [8], and cases there cited.

Assignment 14 is that the court erred in permitting the state's attorney to so question the medical student as to permit him to repetitiously state his certainty that defendant was involved in the commission of the offense charged. The record shows that the trial court permitted counsel for the state, over the objection of the defendant, to ask the witness, after he had identified defendant as one of the two men, whether there was any doubt at all in his mind that defendant was one of the men and immediately thereafter to ask whether he was certain that he saw this man (pointing to defendant) come to the car on the occasion in question. It seems apparent that there was no unduly extensive or harmful repetition of the witness's positive identification of defendant.

Assignment 17 complains that the trial court erred in permitting a police officer to testify that defendant and Andrew Dugger (the other alleged participant) were friends and that as a result of that friendship defendant was arrested. The record shows that upon a search of the automobile in which the rape occurred, police found a billfold which, based on its contents, apparently belonged to one Arthur Dugger; that they investigated and found that defendant was Dugger's friend and thereafter arrested defendant. While it is not apparent to us that the fact that the investigation of Dugger led to defendant's arrest was relevant, we are convinced that such testimony under the facts of this case was not prejudicial to the defendant.

Assignment 21 avers that the trial court erred in permitting a police officer to testify that defendant was not injured while at the police station on the ground that such was a conclusion. The portion of the record which deals with the subject of this assignment indicates that the trial court sustained the only objection made, which was to the form of a question.

Assignments 11 and 26 charge that the trial court held defendant's counsel "up to ridicule" and thereby made it impossible for the defendant to receive a fair and im-

partial trial. As to the first incident, the record shows that during cross-examination a state's witness gave an answer to a question; thereafter the court inquired of defendant's counsel whether he had any further questions. Counsel said "Yes," and the court remarked, "Well, you are writing and I just wondered if you were going to ask any more questions, * * *." Counsel at the bench out of the hearing of the jury stated that he had been cross-examing for only ten minutes and that the court's remark made it appear that he was improperly trying the case and held him up to ridicule. He asked that the jury be instructed to disregard the court's remarks and that a mistrial be declared. The court requested counsel to use less time in writing and more in asking questions, and noted that during the short cross-examination counsel had written six pages. Thereafter the cross-examination proceeded. While it would have been much better for the trial court to have admonished counsel out of the hearing of the jury, the court's remarks, standing alone, did not tend to "hold counsel up to ridicule," much less prejudice defendant.

The second incident (assignment 26) involves this situation: defense counsel in his closing argument said that the written statement given by defendant to the police did not indicate a voluntary disclosure by one who was telling what he knew to have happened; the implication apparently intended was that the statement showed that defendant did not know what had happened because he wasn't there. Counsel then said, "You can take that statement down to the jury room, if you want to, and read it." Whereupon the trial court told counsel he had no right to make that statement, that he should know he should not have made it (apparently counsel then must have thrown some papers onto a table) and the court said, "And don't throw your papers down, either. We are going to try this case like a trial should be conducted." Then at the bench when defendant's counsel contended that the jury did have a right to take the

exhibits to the jury room, the court emphasized that counsel did not have the right to tell the jury that it could take anything to the jury room and defense counsel objected that the court was talking in a loud voice. The court agreed that he was so talking in order that the jury would know that it was not entitled to the exhibits as a matter of course and that counsel was not entitled to say otherwise. Colloquy along the same line continued. Finally, defense counsel asked whether he could say to the jury that it could take the statement to the jury room and the court said, "You may not." Whereupon, counsel requested a mistrial because the court had held him "up to such ridicule that the defendant cannot receive a fair and impartial trial." The court remarked that counsel "had invited everything," and told counsel to make no further reference to what the jury could take to the jury room, whereupon counsel proceeded with his argument with respect to the statement which he had been theretofore discussing.

It is true that a jury may not as a matter of right take exhibits to the jury room; whether a jury may so do is within the trial court's discretion. State v. Smith, Mo., 357 S.W.2d 120, 123 [9]. Consequently, it was incorrect and it was improper for defendant's counsel to state, without having obtained the prior approval of the trial court, that the jury might take defendant's statement to the jury room. It appears that defendant's counsel had given the trial judge some provocation for the court's seemingly uncalled-for repetition within the hearing of the jury of the fact that counsel's statement was erroneous. Further, in the absence of any other showing, we must assume that defendant's counsel's actions, in addition to what the record reflects, in some way must have, as the trial court said, "invited" the course which the trial court pursued. In any event, there is nothing in the record which demonstrates or from which we may reasonably infer that it was likely that the incident was such as to have prejudiced the jury

against the defendant as distinguished from his lawyer.

Assignments 36, 37, and 38 charge that the trial court erred in giving the state's main instruction 2. Defendant says the instruction was erroneous in that it hypothesized that defendant "did then and there at said time" forcibly rape the victim and consequently was not definite as to time and place and further that the circumstances surrounding the occurrence should have been hypothesized. The instruction required the jury to find that defendant "on the 6th day of May, 1962, acting alone or with another," etc. Thus, the exact time of the alleged offense was stated. It was unnecessary to hypothesize the facts shown in evidence as to the manner in which the forcible ravishment was accomplished. Defendant contends further that because the instruction required the jury to find that defendant "did * * * forcibly and against the will of the said * * * rape, ravish and carnally know the said * * *," it thereby had repetitiously and prejudicially used the four words, "rape," "ravish," and "carnally know," when, we assume, one would have sufficed. The crime charged was rape by forcibly ravishing, as set forth in Section 559.260, supra. But it is apparent that the additional words used in the indictment and the instruction did not prejudice the defendant. Finally, defendant says that instruction 2 was erroneous because it required the jury to find that the rape must have been accomplished forcibly "and against the will of the female; that is, without the consent of such female and against the utmost resistance of which she was capable of making and offering under the circumstances shown by the evidence to have existed at said time." Defendant argues that the instruction was erroneous because there was no evidence "to show what, if any, resistance was used by the female." There is no merit in the contention for the reason, among others, that there was ample evidence of the resistance made.

In assignment 39 defendant contends that the alibi instruction, No. 6, was erroneous "in that it requires the jury to be convinced beyond a reasonable doubt of the defendant's innocence." The instruction does not so do. It directed, "If, from all the evidence you have a reasonable doubt as to whether the defendant was present when the crime was committed, then you should give the defendant the benefit of such doubt, and find him not guilty."

Assignment 27 is that the trial court erred in permitting the state's attorney in closing argument to refer to the fact that defendant and Andrew Dugger were friends. As we have noted heretofore, defendant's own evidence showed that he and Dugger were friends and obviously a statement of that fact was not improper.

Assignment 29 complains of error in permitting the state's attorney to argue that defendant should be convicted because "of the prevalence of crime in the City of St. Louis." We do not find in the record the statement or the implication that defendant should be convicted solely because crime was prevalent in St. Louis. We have examined the argument apparently in question and the references therein to the prevalence of crime in St. Louis were well within the scope of proper jury argument. State v. Cox, Mo., 352 S.W.2d 665, 671.

Assignment 28 is that the trial court erred in permitting state's counsel in closing to argue that the reason defendant had no prior convictions was because he was only seventeen. The record shows that the state's attorney said that the evidence indicated that defendant was seventeen; that " * * * you can't get a criminal record until you are seventeen. So he has only had, at most, a year to get a criminal record, so that doesn't mean so much for him because he is only seventeen years of age, so he hasn't lived any long lifetime of peace and quiet, he is only seventeen years of age." The court overruled defendant's objection on the ground that the

argument had been invited. Defendant's counsel had theretofore argued that his client was innocent of the crime charged and that he had never been convicted of a crime. While, as pointed out by defense counsel in stating his objection, a 15 or 16 year old can be tried as an adult, still, we think the argument was invited and that what was said by state's counsel did not exceed the bounds of proper retaliatory argument.

■ Assignment 24 charges that the trial court erred in permitting three police officers and an assistant circuit attorney to testify in rebuttal because their testimony did not constitute "proper rebuttal evidence." In so far as the assignment may be sufficient under Criminal Rule 27.20, V.A.M.R. (See State v. McCormack, Mo., 263 S.W.2d 344, 346 [5]), the record shows that no objection was made to the testimony of any of the witnesses specified except to the testimony of one of the police officers. During the trial, on cross-examination, that officer testified that he had taken defendant to a shower room at the police station sometime subsequent to his arrest. On redirect it was shown that defendant was taken to a shower room several days after his arrest so he could shower and change clothes. Defendant testified he was taken to the shower room, required to remove his clothes, lie on his back, and that an officer kicked him in the leg. The officer, whose testimony was objected to, testified in rebuttal that he did not take defendant to the basement at any time, did not require him to remove his clothes, did not kick him, did not see any other officer kick him, and that defendant was not taken to the basement for any purpose on the day of his arrest.

It is apparent that most of the officer's testimony was proper rebuttal but even if some of his testimony was not strictly rebuttal evidence, still "the scope of rebuttal testimony is largely within the sound discretion of the trial court, and, unless the court has abused its discretion, or a defend-

ant's rights are prejudicially affected, an appellate court will not reverse on that ground, even though the evidence in question is not strictly rebuttal evidence." State v. Martin, Mo., 56 S.W.2d 137, 140.

■ Assignment 33 is that the punishment assessed was excessive and (34) so excessive as to indicate bias and prejudice on the part of the jury. The punishment fixed by the jury, 40 years in the state penitentiary, was within the range provided in the statute under which defendant was charged and convicted. Section 559.260, supra. There is nothing suggested in the new trial motion and nothing appears in the record to support the claim that the jury's verdict indicated prejudice, nor is there anything in the record which is relevant to the question of excessiveness. Thus, there is no merit in either assignment. State v. Sheard, Mo., 276 S.W.2d 191, 195 [10, 11]; State v. Rose, Mo., 249 S.W.2d 324, 334 [18]; State v. Stumph, Mo., 349 S.W.2d 954, 955 [4].

Each of defendant's new trial assignments, 1, 2, 3, 4, 8, 19, 20, 25, 31, and 32, is too general to have preserved any matter for appellate review in that none is sufficient under the requirement of Criminal Rule 27.20 that a motion for new trial must set forth in detail and with particularity specific grounds or causes therefor. Those assignments aver, respectively, that the trial court erred: in permitting plaintiff's counsel to inject improper, illegal, unlawful and prejudicial material in his opening statement and his closing argument; in admitting illegal, incompetent, immaterial, and prejudicial testimony; in giving and reading to the jury each and every instruction given as the law of the case; in limiting and restricting defendant's right of cross-examination of state's witnesses; in limiting and restricting defendant's examination of prospective jurors on voir dire; in permitting a police officer to testify as to what other officers did and to give testimony which was hearsay; in permitting an officer to testify pertaining to police depart-

ment rules relating to "taking of persons to the hospital"; in limiting defendant's attorney in his closing argument; in not permitting the jury to examine and read the state's exhibits; and in not granting a mistrial when the state's attorney "made marks and underlined" portions of defendant's signed statement.

We have examined those record matters which we are required to review and find no error in connection with them.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.