STATE of Missouri, Respondent,

v.

Jack SANDERS, Appellant.

No. 59349.

Supreme Court of Missouri,
En Banc.

Sept. 13, 1976.

Rehearing Denied Oct. 12, 1976.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, Philip M. Koppe, Preston Dean, Asst. Attys. Gen., Jefferson City, for respondent.

James C. Jones, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with murder in the first degree. See Section 559.010, RSMo 1969. The jury found him guilty of the offense of manslaughter and his punishment was fixed at imprisonment for a term of five years. Defendant appealed to the St. Louis District of the Court of Appeals. That court adopted an opinion affirming the judgment. Upon application of respondent we ordered the case transferred to this court. It will be finally determined here the same as on original appeal. Art. V, Sec. 10, Mo.Const.

Portions of the opinion of the court of appeals have been adopted without the use of quotation marks.

Defendant's contention on this appeal is that the trial court erred in failing to give an instruction on excusable homicide by reason of accident. He offered two instructions upon that subject.

During a fight between defendant and her husband, Linette Robinson received a mortal stab wound in the chest four inches deep which pierced her heart. There is no question but that the argument and fight between defendant and Robinson was the result of a belief on the part of defendant that Robinson had previously burglarized his apartment.

There was a substantial difference in the testimony as to what occurred immediately prior to the casualty. According to Kenneth Robinson, husband of the deceased, and Mandy Hall, the grandmother of Kenneth, appellant knocked on the door of their apartment and asked to see Kenneth, and he then forced Kenneth at knife point to go up the stairs to appellant's apartment. There then occurred a physical struggle over the possession of a knife. Kenneth testified that it was the knife that appellant used to force him upstairs, but appellant testified that it was a knife that Kenneth had grabbed from appellant's kitchen table. During this struggle, Linette Robinson, Kenneth's wife, entered the doorway. Kenneth testified that all she did was scream, "leave him alone," and that she had no knife. Ellen Walker, who lived with appellant, testified that Linette entered the door with what "seemed" to be a knife, and that she "stabbed" at appellant. Immediately after Linette's entry into the room she was stabbed and sustained wounds which resulted in her death. Kenneth testified that Linette "came and he [appellant] saw her and he turned around and stabbed her," but he admitted that appellant's body blocked his view and that he did not see the actual stabbing. After she was stabbed, Linette went downstairs and collapsed in her bedroom. Mandy Hall testified that when Linette came downstairs she said, "Mama, that man upstairs done stabbed me." In the meantime Kenneth ran out of the building with appellant chasing him, and according to Mandy Hall appellant said to her, "I am going to kill your damned grandson."

We shall set forth in detail the testimony of appellant which he contends entitled him to an instruction on the defense of excusable homicide.

After appellant testified that Kenneth grabbed a knife from a table in appellant's apartment, and that a struggle occurred between the two for possession of it, he testified, in the parts material, as follows:

Q. What happened next?

A. Well, my back was at the door there, and Ellen came around from the bedroom, she was hollering 'you all stop, stop Jack, stop Jack.' I couldn't stop because we was still wrestling. He was trying to hurt me. My back was at the door. She said 'watch your back.' By me turning to see what it was * * * Kenneth was facing me face to face—he had hold of it and I had hold of it—my ankle [angle?] was like this (indicating) we went like this (indicating)—into the body, whoever was behind me would have got stabbed—because I didn't know.

\* \* \* \* \* \*

Q. What happened next?

A. The girl was inside. She was all the way in the door. Ellen said she was stabbing at me. I don't know. After I came around I seen a shiny object in her hand. I don't know if it was a knife or not, but we hit into her somewhere—I don't know where. She fell out the door like that (indicating). Kenneth and I continued to wrestle. He ran from me. I chased him because I didn't know if he was going after Ellen or what.

Ellen testified that Linette ran into the apartment and stabbed at appellant and that she "hollered—I was hollering when she ran in the door. I said 'look out' or 'watch your back' or something of that sort, you know, when I seen her run in the door." She then testified: "They were still struggling, Kenneth and Jack. There was a whirl—as if a little fast movement between the two of them, then I seen Linette fall backward, and when she fell backward I started running."

█ At the outset of our consideration of this appeal we must deal with the State's contention that the point here involved was not sufficiently developed in the assignments contained in the motion for new trial and hence is not preserved for appellate review. The assignment in question is that, "It was error for the Court to deny defendant's request for Instruction A because it was warranted by the evidence." An exactly similar assignment related to Instruction B. Our Rule 27.20(a) requires that "A motion for a new trial shall be in writing and must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor." The decisions of this court have clearly ruled the contention before us in a manner favorable to the State's assertion.

In *State v. Cheek,* 413 S.W.2d 231, 238 (Mo.1967) we stated that, "Supreme Court Rule 27.20(a) provides that a motion for new trial 'must set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor.' In discussing that rule we recently said: 'Among other assignments in the motion for a new trial is the contention that the court erred in refusing to instruct on manslaughter; that such an instruction was requested and refused and that the facts in the case warranted such an instruction. We think this assignment wholly insufficient, under the facts of this case, to comply with Supreme Court Rule 27.20 in that it does not set forth in detail and with particularity the specific grounds or cause therefor, in that it does not indicate in any manner what facts in evidence were considered sufficient to warrant such an instruction.' *State v. Luttrell,* Mo.Sup., 366 S.W.2d 453, 459. To like effect, see also *State v. Burnett,* 365 Mo. 1060, 293 S.W.2d 335[15], *State v. Kukovich,* Mo.Sup., 380 S.W.2d 324[10], *State v. Sprout,* Mo.Sup., 365 S.W.2d 572[9], *State v. Pope,* Mo.Sup., 364 S.W.2d 564[2], and *State v. Benjamin,* Mo.Sup., 309 S.W.2d 602[8]. As we have indicated, defendant in the case before us, has completely failed to specify any *facts* in evidence which would have supported a submission of manslaughter by culpable negligence. In that situation we rule that this assignment wholly fails to comply with S.Ct.Rule 27.20(a) and hence does not preserve anything for review." To like effect see *State v. Mosley,* 415 S.W.2d 796[3, 4, 5] (Mo.1967) and *State v. Schulten,* 529 S.W.2d 432[8] (Mo.App.1975).

In the case before us there was no indication whatever in the assignments as to the facts in evidence that would have supported the giving of an excusable homicide instruction. Therefore, in accordance with the cases heretofore cited we must rule that these assignments failed to comply with Rule 27.20(a) and hence did not preserve the alleged error for appellate review.

Defendant, although contending that the assignments are sufficient, suggests alternatively that we should review the contention under Rule 27.20(c) which reads as follows: "Plain errors affecting substantial rights may be considered on motion for new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised

or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." In the exercise of our discretion we have decided to review the contention under said rule.

■ The court gave an instruction on self-defense but refused the request for one on the defense of excusable homicide by reason of an accidental killing. These two defenses are inconsistent but are both required to be submitted where supported by the evidence unless defendant's personal testimony is relied upon to support both. *State v. Wooten,* 498 S.W.2d 562[3] (Mo. 1973). Here, the defendant's testimony does not in any manner support the self-defense submission. Therefore, if his testimony does support the theory of accident the excusable homicide instruction should have been given.

■ The relevant testimony of defendant has been heretofore set out. It is rather vague and indefinite as to just what occurred during his struggle with Robinson. It does, however, clearly indicate that defendant at least had partial control of the knife at the time Linette was stabbed. There is also no indication in his testimony that the stabbing was intentional. It therefore would seem to follow that if the jury believed that testimony it reasonably could have found that the stabbing was accidental. It follows that the court should have given an instruction submitting the defense of accident.

■ It must be kept in mind, however, that our ruling does not necessarily mean that the judgment should be reversed and the cause remanded for a new trial. We have reviewed this point under the plain error rule which provides that such relief be granted only when the court deems that the error has resulted in "manifest injustice or miscarriage of justice." Our cases have held that it is our duty to review the facts and circumstances in each case and to determine that question on a case to case basis. See *State v. Patterson,* 443 S.W.2d 104[2] (Mo.1969) and concurring opinion of Finch, C. J., in *State v. Randolph,* 496 S.W.2d 257 (Mo.1973).

We have carefully reviewed the transcript in this case and have concluded that no manifest injustice or miscarriage of justice resulted from the failure of the court to give an excusable homicide instruction. The reasons for our conclusions are twofold. In the first place our review of the transcript indicates generally that defendant received a fair trial. Secondly, we have the view that defendant could have argued the accident defense even though no accident instruction was given.

The court gave instructions submitting first and second degree murder and manslaughter. The two murder submissions required a finding that defendant "intended to take the life of Linette. . . ." While the manslaughter instruction did not contain that requirement the fact of an intentional killing is inherent in that offense. See definition on page 9 of chapter on manslaughter in Committee Comments on MAI–CR. If the killing of Linette was accidental it certainly was not intentional and defendant, upon such a finding by the jury, was entitled to be acquitted. Therefore, in arguing the issue of intent defendant could argue that it was an accidental killing. We have examined the argument made by the attorney for defendant and while he did not use the word accident he stressed the testimony of defendant indicating that the stabbing was accidental and concluded therefrom that defendant was "not at fault." Defendant's attorney summed up the situation rather succinctly when he told the jury, "If you believe Kenneth Robinson, . . . then Jack Sanders is guilty as charged. On the other hand, if you believe the testimony of Ellen Walker and Jack Sanders, then . . . Jack Sanders is not guilty." The jury obviously believed the State's witnesses and did not believe defendant and Ellen Walker.

■ We have not overlooked the fact that if this contention had been properly preserved for review we would likely reverse and remand as a matter of policy. *State v. Ameen,* 463 S.W.2d 843 (Mo.1971). However, in endeavoring to determine the

presence of "manifest injustice" we are warranted in adopting a more practical view of the result of the failure to give the instruction.

While the jury was deliberating, a request was communicated to the court as follows: "Jury request photograph—the one he showed the jury—the one with knife on it." The parties agree that this was State's Exhibit No. 9 which was a photograph, not of the place where the struggle took place and where Linette was stabbed, but of the room in the apartment downstairs where Linette collapsed and died. It was not identified at trial except that it was a "picture of the general interior of that bedroom at Two North." The court denied the request for the exhibit and instructed the jury that "you are to consider same as you recall and remember it to be." From our examination of the exhibit it appears that there is a rather large knife lying on the floor of the room.

■ Defendant admits that permission to take evidentiary exhibits into the jury room is within the sound discretion of the trial court. See *State v. Arrington,* 375 S.W.2d 186 (Mo.1964). He argues, however, that the court's denial in this case was an abuse of discretion because there was no reason to deny the request, and for the jury to be able to review what was shown on the photograph might have been helpful in its deliberations on the issue of self-defense.

In the exercise of its discretion the trial court might have permitted the photograph to be taken to the jury room, but the jury had examined the photograph during the trial, and it was only one item of the total evidence of the case. In the exercise of its discretion, the trial court apparently concluded that Exhibit No. 9 should be treated like the other evidence, and we cannot say that such was an abuse of discretion. The point is disallowed.

The judgment is affirmed.

MORGAN, HENLEY and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents.

SEILER, Chief Justice (dissenting).

I agree with the principal opinion that the court should have given an instruction submitting the defense of accident. However, I do not believe that the defendant received a fair trial without such an instruction or that the fact that he could have argued without the instruction that the killing was accidental was in practical effect the equivalent of the instruction, so that the failure to give it was not a manifest injustice.

If the court had given the instruction as it was required to do, whether asked for or not, then this is what the jury would have been told in such an instruction according to MAI–CR:

"One of the issues in this case is whether the death of Linnette Robinson was an excusable homicide. By 'excusable homicide' is meant the killing of another by accident or misfortune under the circumstances submitted in this instruction. On that issue you are instructed as follows:

"1. The state has the burden of proving beyond a reasonable doubt that the death of Linnette Robinson was not an excusable homicide. The defendant is not required to prove that the death was excusable. If the death was an excusable homicide, or if the evidence in this case leaves in your mind a reasonable doubt as to whether the death was an excusable homicide, then you must find the defendant not guilty.

"2. You will acquit the defendant on the ground of excusable homicide and return a verdict of not guilty if the death of Linnette Robinson was the result of accident or misfortune in a struggle between defendant and another for control of a knife when she was stabbed without unlawful intent and without reckless disregard for human life and safety."

This would have put the defense of accidental homicide squarely in front of the

jury with the burden of proof on the state to show that it was not accidental, and in my opinion arguing accident obliquely as not being a part of manslaughter is by no means the practical equivalent of having and being able to argue a direct instruction on the issue. In fact, as shown by the statement of facts in the majority opinion, the case was a close one and the jury could very well have believed that the issue of accident was in doubt, that defendant had not proved it, and hence they could not find for defendant on that basis which would have been a mistaken line of reasoning on the jury's part and which the instruction would have dispelled. There is no way to tell, of course, what the jury did or did not think in this case. Everything that we say about that is mere speculation. That's one reason for having written instructions to guide the jury. We still do not know that the jury follows written instructions, but it's the best system we have and defendant in this case was deprived of an instruction to which under the majority opinion he clearly was entitled. This is not the way defendant should have been tried. The state got everything it was entitled to, but the defendant did not. Under the circumstances this seems to me to be a clear example of manifest injustice against which we should give relief.

I would reverse and remand for a new trial.

BARDGETT, Judge (dissenting).

I respectfully dissent. The defendant specifically requested the MAI–CR excusable homicide instruction which was refused. The motion for new trial alleged error in failing to give that instruction because "it was warranted by the evidence". When the point is so stated with reference to a specific MAI–CR instruction that has been requested, I believe the error is preserved for review. The principal opinion demonstrates that there was evidence to support the excusable homicide instruction. Therefore I would reverse and remand for error in refusing to give the requested instruction.