**STATE of Missouri, Plaintiff-Respondent,**

v.

**George JENKINS, Defendant-Appellant.**

**No. 42249.**

Missouri Court of Appeals, Eastern District, Division One.

July 14, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied Nov. 10, 1981.

---

Anthony L. Anderson, Clayton, for defendant-appellant.

John Ashcroft, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, William N. Seibel, Jr., Asst. Pros. Atty., St. Charles, for plaintiff-respondent.

STEWART, Judge.

Defendant was found guilty of assault with intent to do great bodily harm without malice aforethought. His punishment was fixed at a fine of $1,000 and confinement in the county jail for a period of five months. Defendant had also been charged in a separate count with exhibiting a deadly weapon in a rude, angry or threatening manner. The jury returned a verdict of not guilty on the latter charge.

On this appeal defendant contends that the court erred (1) in denying his motion to require the State to elect upon which count of the information it would proceed; (2) in giving Instruction No. 13 on common assault; (3) in refusing instructions proffered by defendant with respect to defense of premises, preservation of the peace and justifiable use of force by a law enforcement officer, and accident; and (4) in failing to give MAI–CR 2.50 "Character of Defendant Bearing on Guilt or Innocence." We affirm.

The evidence viewed in the light most favorable to the State would permit the jury to find the following facts. Defendant was a supervisor for J & S Security Service. J & S had a contract to provide security for the Blowup Social Club at their picnic that was being held at the Kingsmen Gun Club in Wentzville, St. Charles County, on July 23, 1978. Jenkins and a crew of J & S security personnel undertook to provide security at the picnic. Mr. O'Connor, an officer with the Pagedale Police Department in St. Louis County, was the owner of O'Connor Security Service and usually provided security for the Kingsmen Gun Club. On the afternoon of the picnic Mr. O'Connor went to the picnic grounds intending to provide security. O'Connor and Jenkins

had a discussion. O'Connor withdrew his men after he spoke with the president of the Kingsmen Club. J & S then provided security for the picnic.

Lt. Morise King of the Pagedale police force was employed part-time by O'Connor Security and had been advised that he was to report for work at the Kingsmen Club at 8:30 that evening. O'Connor had not been able to contact King to tell him not to report to work, and King arrived at 8:30 PM. He was in sports clothes and had a gun in his waist band. He drove up to the ticket window and identified himself as a police officer and as a security guard who was to work for O'Connor that evening. When he was advised that another company was handling security that evening, he asked to see the president of the Kingsmen Gun Club. He then drove his car into the grounds and off the roadway. As King was getting out of his car, defendant ran over to the car with a gun in hand threatening King. Defendant cocked the gun and pointed it at King's face. When King attempted to explain his presence over defendant's threats, defendant ordered one of the security guards to place King's hands behind his back and handcuff them. Defendant then pushed King toward a tree while hitting him across the head and neck with the gun. After they got to the tree King was cuffed to the tree in such position as to be partially hanging, his toes barely touching the ground. King was left in that position for about 35 minutes until a St. Charles County deputy sheriff arrived in response to a call by one of the J & S security guards. The parties were informed that no arrests would be made and any complaints would have to be filed with the prosecuting attorney the next day.

King's wrists were cut and bruised from the handcuffs and his right thumb was injured.

Defendant first contends that the court erred in denying his motion to require the State to elect upon which of the two counts of the information it would submit to the jury because "(1) the two distinct felony offenses charged differed only in that the law of 'assault' generally prohibits a designated kind of conduct and the 'exhibiting' charge prohibits a specific instance of that general conduct and (2) the offenses charged were part of a continuing course of conduct so that in view of a timely motion to elect, Jenkins could not be convicted of more than one of those offenses."

▪ We need not go into an extended discussion of the merits of defendant's contention because defendant has not shown that he was prejudiced by the court's action. Defendant was not convicted under both counts of the information. The evil sought to be avoided by election of charges is multiple punishment for the same offense. See *State v. Parsons*, 513 S.W.2d 430, 438 (Mo.1974). We need not and therefore do not determine whether one of the crimes charged was a specific instance of the generally prohibited conduct involved in the other charge. Defendant was acquitted of the crime of exhibiting a deadly weapon in a rude, angry or threatening manner and was not prejudiced by the failure of the court to require the State to elect between the charges. *State v. Coleman*, 599 S.W.2d 789 (Mo.App.1980). We also observe that conviction on both counts in those cases when the State should elect would not necessitate the granting of a new trial. The remedy is dismissal of the appropriate count. See *State v. Parsons, supra,* at 438. The trial court did not commit reversible error in denying defendant's motion to elect.

▪ As we read defendant's second point he complains of the form of Instruction No. 13 (MAI–CR 6.26) Common Assault as compared with Instruction No. 11 (MAI–CR 6.24) Assault Without Malice Aforethought in that Instruction No. 11 on the lesser included offense contains a statement of the means of assault whereas Instruction No. 13 does not contain a statement of the means; Instruction No. 13 requires only that defendant "assaulted" the victim.

We have reviewed the instructions referred to and find that they follow the forms approved by the Supreme Court. The trial court was required to follow the

approved instructions (Rule 20.02) and we "are powerless to declare erroneous a pattern criminal instruction contained in MAI–CR." *State v. Washington*, 570 S.W.2d 838, 843 (Mo.App.1978).

Defendant's next point relied on reads as follows:

"The court erred in refusing defendant's instructions A, B, C, and D defining lawful defense of premises, lawful defense of premises and preservation of the peace, justifiable use of force by a law enforcement officer, and the words 'law enforcement officer' respectively, and by not instructing on 'accident,' because there was evidence to support all of the aforesaid in that (1) Jenkins' employer had contracted with the lessee of the premises to provide security services, (2) Jenkins acted in the course and scope of his employment, (3) King was disturbing the peace and was a 'gatecrasher' or trespasser, i. e., one who remains on private property after having been asked to leave in accordance with § 560.447 RSMo Supp. 1974, (4) Jenkins was acting in a law enforcement capacity in attempting to make an arrest, and (5) if King's handcuffs hurt his wrist, it was an accident."

The State argues that defendant has failed to preserve the many issues raised under this point because the assignments of error in the motion for new trial do not meet the standard set out in *State v. Sanders*, 541 S.W.2d 530 (Mo. banc 1976). The court in *Sanders* held that an assignment of error based upon the failure of the trial court to give an instruction must set out facts that would support the giving of the instruction. To state the conclusion that there was sufficient evidence to require the court to give a particular instruction does not preserve the issue for appellate review. Paragraph 7 of the motion for new trial is illustrative of all of the assignments of error as to instructions A, B, C and D and reads as follows:

"The Court erred in refusing to instruct on 'justifiable use of force of a law enforcement officer' as submitted in refused instruction Nos. C and D, for the reason that there was evidence to support a finding that defendant was acting in a law enforcement capacity and attempting to make an arrest."

This and the other assignments of error with respect to Instructions A, B, C and D contain nothing but the conclusion that there was sufficient evidence to support the giving of the instructions requested. The issues contained in the point relied on have not been preserved for our review. *State v. Sanders, supra.*

We observe, however, that the trial court gave MAI–CR 2.40 modified as submitted by defendant which covers defendant's complaint in Point III (3). The facts do not support defendant's contention that he was a "law enforcement officer" within the definition submitted in his instruction D which defines the term as "any public servant having both the power and duty to make arrests for violations of the laws of this State." Defendant was employed by a private firm. He was not a public servant and therefore was not entitled to Instruction C and D.

As to defendant's complaint that the court failed to give an instruction on accident, we find no such assignment in the motion for new trial. This issue has not been preserved for our appellate review. We also observe that there was no evidence that would support an instruction on accident.

For his final point defendant claims that the court erred in failing to give MAI–CR 2.50 (Character of Defendant Bearing on Guilt or Innocence) because there was evidence of defendant's general reputation of good character.

The trial court is required to give MAI–CR 2.50 when there is substantial evidence of a defendant's good reputation with respect to those traits of character which would ordinarily be involved in the commission of an offense such as that with which defendant is charged. *State v. Wells*, 586 S.W.2d 354 (Mo.App.1979).

The only basis for defendant's contention that is supported by the record is the following testimony on direct examination:

"Q  Have you ever been convicted of a crime?
A  No, sir."

The fact that defendant was never convicted of a crime is not evidence of traits of character that are relevant to the crime with which he is charged.

We find no reversible error.  The judgment is affirmed.

STEPHAN, P. J., and DOWD, J., concur.