**UNITED STATES of America ex rel.
Troy VICTOR, Petitioner,**

v.

**Howard YEAGER, Warden, Respondent.**

**Civ. No. 742-71.**

United States District Court,
D. New Jersey.

Aug. 24, 1971.

Troy Victor, pro se.

Michael H. Stieber, Asst. Prosecutor,
Newark, N. J., for respondent.

## MEMORANDUM AND ORDER

LACEY, District Judge:

Petitioner, Troy Victor, proceeding *pro se*, seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq., attacking the legality of his confinement in New Jersey State Prison.

Upon the filing of respondent's answer, the cause was referred to the Honorable John W. Devine, United States Magistrate, pursuant to 28 U.S.C. § 636(b) (3) and General Rule 40E(3), for his preliminary review and report, and recommendation to this Court as to whether a hearing is warranted.

This Court has conducted an independent review, in compliance with Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), of the peti-

tion for the writ, the answer of respondent, the exhibits, and the report and recommendation of the Federal Magistrate, which is filed with this Memorandum and Order. The following is to supplement the Magistrate's report and recommendation.

This proceeding dramatizes the growing abuse of the Great Writ by distorting it into an appellate review of state court proceedings.

The relator was convicted and sentenced in the Essex County Court in June 1968; the Appellate Division affirmed the conviction on September 30, 1970; the New Jersey Supreme Court denied certification on November 17, 1970, 57 N.J. 210, 271 A.2d 5; and the United States Supreme Court denied certiorari on March 22, 1971, 401 U.S. 981, 91 S.Ct. 1216, 28 L.Ed.2d 332. Within two months thereafter the instant petition was filed, its text drawn principally, and largely verbatim, from the briefs filed in the state courts.

Whatever merit there may have been on direct review to petitioner's contentions, they do not require constitutional adjudication on collateral review. Nonetheless, the Magistrate, and this Court, to render a determination herein, had to read almost 600 pages of trial transcript and 75 pages of briefs and opinion. A dire prediction, based on the current substantial trend, can be made: the time is not far distant when virtually *every* convicted defendant will seek further "appellate" review by habeas corpus immediately after state appellate affirmance of his conviction.

Even partial fulfillment of this prophecy will cripple the District Court of this district. The intrusion of these matters even now consumes a substantial part of the Court's available time.

Under date of May 26, 1971, Honorable Quentin N. Burdick (Sen.N.Dak.), Chairman of the United States Senate's Subcommittee on Improvements in Judi-cial Machinery to the Senate's Committee on the Judiciary, transmitted to the federal judiciary a draft bill (S. 1876) providing for comprehensive revision of certain sections of Title 28 of the United States Code. An extract from the Congressional Record (92d Cong., 1st Session, vol. 117, May 14, 1971, pp. 1 et seq.), transmitted therewith, highlights a portion of a statement of former Chief Justice Warren which led to a 10-year study of federal court jurisdiction by the American Law Institute:

It is essential that we achieve a proper jurisdictional balance between the federal and state court systems, assigning to each system those cases most appropriate in light of the basic principles of federalism.

This extract, which is Senator Burdick's presentation of S. 1876 to the Senate, points with alarm to the unprecedented increase in 1970 in the cases pending in the United States District Courts; states that the number in 1970 was up 10% in just one year; and that it represented a 66% increase over 1960. Senator Burdick then states:

\* \* \* In light of these changes, it is appropriate for Congress to examine the jurisdiction of the Federal Courts.

It is indeed appropriate, and terribly necessary. With rare exceptions, a habeas corpus petitioner asserts grounds requiring a reading of the entire trial transcript. With Jackson v. Denno, Stovall v. Denno, and *Mapp* hearings, further enlarging the record in many cases, the petition which does not require reading several hundred pages of transcript is the exception. The burdens sought to be lifted from the federal judiciary by S. 1876 are light and tolerable contrasted with those imposed by the habeas corpus jurisdiction. It is to the latter to which all three branches of government should devote concentrated and concerned attention.[1]

---

1. Information coming to the attention of this Court indicates two studies are underway in this area, one under the aus-pices of the Federal Judicial Center, the other by the American Bar Foundation (Telephone advice from Administrative

In addition to the threatened inundation of the federal court system and the unsettling effect upon the delicate federal-state balance stemming from the habeas corpus procedure, there is another pernicious result: a lack of finality, with all that is entailed, for society generally, the defendant himself, and law enforcement. *See* Justice Harlan, concurring in Nelson v. O'Neil, 402 U.S. 622, 630, 91 S.Ct. 1723, 1728, 29 L.Ed.2d 222 (1971):

> I venture to repeat what I stated earlier this Term in *Mackey, supra:* "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved."

 The case at bar is an example of what is being presented so often to the federal courts by way of habeas corpus. The relator, who did not take the stand at trial, gave the court and jury no basis for considering a verdict of guilty of voluntary manslaughter, that is, that he killed the victim while acting in a "heat of passion * * * a passion which effectively deprives the killer of the mastery of his understanding and which is acted upon before a time sufficient to permit reason to resume its sway * * *." State of New Jersey v. Fair, 45 N.J. 77, 96, 211 A.2d 359, 369 (1965). As stated in State of New Jersey v. Gosser, 50 N.J. 438, 453–454, 236 A.2d 377, 385 (1967), cert. denied, 390 U.S. 1035, 88 S.Ct. 1434, 20 L.Ed.2d 295 (1967):

> * * * [There was not] sufficient evidence that the killing was in
>
> passion or heat, let alone with legally adequate provocation. Such evidence, if it was the fact, could only have been furnished by the defendant and he declined to testify.

What was relator's defense at trial? It was that he did not commit the murder, that he was not on the premises where the murder was committed, when it was committed, a position hardly consistent with what he now urges.[2]

Thus, relator's trial counsel, in opening to the jury, stated in effect that his client was not on the premises where, and when the shooting took place. (T–14; R–1).[3] Thereafter, the prosecutor in making a proffer of proof stated to the court: "* * * his opening was that he wasn't there * * * it would seem that the defense in this case is one of some sort of an alibi that he was not there at the time this happened * * *." (T–154; R–1). Defense counsel failed to respond to this characterization of the defense case.

Later, in colloquy with the trial court, defense counsel said: "Well, my position is that we didn't do it * * *. We weren't there * * *." (T–2.59; R–1).

On the defendant's case his lawyer called as a witness a young man whom he had referred to in his opening as one who had accompanied the defendant at the time the shooting occurred, creating the clear inference this witness would, by his testimony, show defendant was not on the premises at the time of the

---

Office of the United States Courts, August 2, 1971). The number of petitions filed is no real indication of the impact on the time of the Federal judiciary. What is significant is the time required to review the state court proceeding. *Cf.* 83 Harv.L.Rev. 1038, 1041 (1970).

2. This Court of course recognizes that a defendant is entitled to a manslaughter charge if the State's case warrants it,

although his own proof may be inconsistent therewith. Here, however, not only were his own proofs (and his lawyer's theory of defense) inconsistent with a manslaughter defense; the State's case did not support such a charge to the jury.

3. R–1 is the Trial Transcript. T–14 refers to the page. Other exhibits are as listed in the Magistrate's Report, p. 4, and in the Appendix hereto.

shooting. This witness when called supplied no such testimony (T–3.27—3.-42; R–1).

Later defendant's counsel told the court, out of the jury's presence, that he had advised his client not to take the stand. The court then had dialogue with the defendant, during which the defendant stated: "* * * I never in a day of my life killed nobody * * *." (T–3.105; R–1).

Finally, on summation, defense counsel said: "* * * Yet no one has come here today and said it was in self-defense. And why? Because Mr. Victor did not do it, self-defense or any other way * * *." (T–4.18; R–1); and counsel suggested another, whom he specifically named, might have done the killing. (T–4.31; R–1). Nor is this all. On October 10, 1970, relator wrote to his counsel, in pertinent part, as follows (R–4: Ltr. annexed to Petition for Certification):

> * * * I didn't want anything about manslaughter mentioned on the brief simply because I had nothing to do with this crime for which they convicted me, simply because I am black.

He also wrote to counsel on April 13, 1970, commenting on the brief filed on his behalf in the Appellate Division (R–4: Ltr. annexed to Petition for Certification):

> * * * the argument * * * belies my original position which has not changed. I was not there when the crime was committed.

It was the "original position" which trial counsel set forth at the trial, obviously with the acquiescence, if not at the direction, of the relator.

It would have been error to submit voluntary manslaughter to the jury. In addition to circumstantial evidence, there was abundant evidence, from eye witnesses to support the jury's verdict. United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3 Cir. 1970); United

States ex rel. Griffin v. Martin, 409 F. 2d 1300 (2 Cir. 1969).

The insubstantial claims based upon Senator Kennedy's assassination, and admission of photographs, implicate nothing more than the trial judge's discretion, and, as such, are likewise rejected. *See* United States v. Angelo, 153 F. 2d 247, 251–252 (3 Cir. 1946), where the court said:

> * * * the proper administration of justice requires the vesting of discretion in the trial judge. It would be both impossible and undesirable to delimit strictly the powers of the trial judge and to set detailed regulations for the conduct of every case * * *. On the judge rests the chief responsibility for the result; he is the cornerstone of any effective administration of trial by jury, and we are disposed to give him great leeway.

*See also* United States v. Chicarelli et al., 445 F.2d 1111 (3 Cir. 1971).

Finally, the prosecutor's remarks on summation, as the Magistrate properly points out, drew an immediate rebuke from the court, a cautionary instruction to the jury, and were not made the subject of a motion for mistrial (T–4.51—4.-52; R–1). It can hardly be claimed the comment was constitutionally impermissible. In any case, it can be said "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" and does not afford a basis for habeas corpus relief. Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

Because of the issues raised, and the exhibits available to this Court, no evidentiary hearing is required.

It is on this 23d day of August, 1971,

Ordered, that the report and recommendation of the Federal Magistrate be, and hereby is, adopted as the opinion of this Court, together with the Court's supplement, and that the petition of Troy Victor for a writ of habeas corpus,

filed in this Court on May 20, 1971, be and hereby is denied; and this Court certifies there is no probable cause for appeal from this Order.

## APPENDIX

United States District Court
District of New Jersey
Docket No. C. 742–71

United States of America
ex rel.
Troy Victor, #46716,
 Petitioner

v.

Howard D. Yeager, Warden,
 Respondent

Civil Action
(On Petition for Writ of
Habeas Corpus)

Report and Recommendation

---

Troy Victor seeks, pro se, the issuance of a writ of habeas corpus pursuant to 28 U.S.C.A. § 2241 et seq. He was convicted of second degree murder (N.J.S. 2A:113–2) on June 6, 1968 and sentenced on June 28, 1968 to 15 to 18 years in prison. He is now confined in the New Jersey State Prison. The Appellate Division affirmed in an unpublished opinion dated September 30, 1970. Certification was denied. 57 N.J. 210, 271 A.2d 5 (1970). The Supreme Court of the United States denied certiorari. 401 U.S. 981, 91 S.Ct. 1216, 28 L.Ed.2d 332 (1971). Petitioner has exhausted his state remedies. 28 U.S.C.A. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The petition has been referred pursuant to our General Rule 40E(3).

Petitioner contends

I That he was denied rights guaranteed by the Fifth, Sixth and Fourteenth Amendments because the trial court did not instruct the jury that it could find him guilty of voluntary manslaughter;

II That there was insufficient evidence to convict him of second degree murder;

III That the trial court should have granted a mistrial because of the publicity which attended the as-sassination of Senator Robert Kennedy;

IV That admission in evidence of certain photographs was improper; and

V That the prosecutor made improper comments during trial.

### I

"An allegation of impropriety in the charge to the jury entitles [petitioner] to federal habeas corpus relief only where it is shown that it constituted fundamental error resulting in a deprivation of due process." United States ex rel. Chase v. Rundle, 266 F.Supp. 487, 490 (M.D.Pa.1967), cert. den. 390 U.S. 928, 88 S.Ct. 865, 19 L.Ed.2d 991; Wade v. Yeager, 245 F.Supp. 62 (D.N.J.1964).

On the record before us it is apparent that this contention is not equitable to a "fundamental error resulting in a deprivation of due process."

### II

Petitioner's second contention is also lacking in merit. The test for habeas corpus relief is not whether the verdict was against the weight of the evidence but whether there was *any* evidence to support it. United States ex rel. Mallory v. Myers, 240 F.Supp. 373 (E.D.Pa.1964), affirmed 343 F.2d 912

(3 Cir. 1965), cert. den. 381 U.S. 943, 85 S.Ct. 1781, 14 L.Ed.2d 706 (1965). The record in this case demonstrates that there was ample evidence for the jury's verdict.

### III

■ During petitioner's trial Senator Robert Kennedy was assassinated. The trial court denied petitioner's motion for a mistrial and properly instructed the jury that that unfortunate event was to play no part in the case before them. Petitioner's assertion that he was entitled to a mistrial because of the publicity which was given to the assassination is patently without merit.

The grant or denial of a mistrial is within a trial court's discretion. That discretion was not abused here by any standard. The denial of that motion in this case clearly does not rise to the level of a constitutional wrong.

### IV

■ The photographs now objected to were admitted in evidence without any objection. They are S–1 through S–4. They depict respectively the outside of the building in which the murder occurred; the rear of the first floor and the stairs leading to the second floor; the front doorway and foyer and the body of the victim; and, finally, a wig and knife. Six other similar photographs were marked for identification but never introduced in evidence.

■ The introduction of those photographs was a matter within the discretion of the trial court. In the absence of such an abuse of that discretion as to amount to fundamental unfairness, this contention has no merit, particularly where, as here, no objection was made at trial. In any event, we find no such abuse here.

### V

During summation the prosecutor said,

"But there is evidence in this case that Victor Velez didn't run away. He ran to the police car. Where is this mysterious case? Where is the gun? Ask Cristina [a witness for petitioner] where the gun is."

Petitioner's trial counsel objected. The trial court then rebuked the prosecutor and advised the jury that it was to "disregard [that] reference entirely * * * [as] * * * entirely uncalled for."

In the totality of the circumstances present here, we do not find that the challenged comment presents an issue of constitutional dimension.

In view of the foregoing we recommend that the petition be dismissed and that no certificate of probable cause be issued.

The record [1] is sufficient for the resolution of this petition without an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Respectfully submitted,
John W. Devine
United States Magistrate

---

1. The following exhibits have been received:
 R–1—Trial transcript of State v. Victor, in four volumes.
 R–2—Brief and Appendix of petitioner on direct appeal.
 R–3—Brief of State of New Jersey on direct appeal.
 R–4—Letter in lieu of formal petition for certification addressed to Clerk of State Supreme Court, dated October 23, 1970.