STATE of Missouri, Respondent,

v.

William LEE, Appellant.

No. 63296.

Supreme Court of Missouri, En Banc.

Aug. 16, 1983.

James W. Fletcher, Public Defender, Anne Hall, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Lew A. Kollias, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was convicted of first degree murder, § 565.003, RSMo 1978. His sentence was life imprisonment. Although the 1982 amendment to Mo. Const. art. V, § 3 placed jurisdiction of life imprisonment cases in the Missouri Courts of Appeals, this Court has retained jurisdiction in those cases under submission on the effective date of the amendment. *State v. Martin,* 644 S.W.2d 359, 360 (Mo. banc 1983). That is the situation in this case.

Defendant relies on three points of alleged error in his appeal: 1) failure to instruct on the offense of second degree murder; 2) failure to grant a mistrial or permit jury voir dire on the circumstances of the attempted assassination of President Reagan; 3) failure to sustain defendant's motion for judgment of acquittal on the basis of defense of mental disease or defect excluding responsibility.

No reversible error appears, and the judgment is affirmed.

Defendant robbed a liquor store in Kansas City and by a bullet fired to the brain killed the clerk of the store during the process of the robbery. The facts in the case are uncontroverted. And, indeed, defendant's best defense as the case unfolds is that he did exactly as charged, killed the liquor store clerk during the course of a robbery; his defense—mental disease or defect.

The liquor store clerk was murdered December 10, 1979. No one witnessed the killing, but the cash register had been emptied of $204. Police were baffled as to the perpetrator of the crime, and their investi-

gation had produced no legitimate suspects. But on January 2, 1980, defendant entered a Kansas City, Missouri district police station, announced that he had killed the clerk and turned over the murder weapon to a startled desk sergeant. Full written confession of the crime, after all appropriate warnings, was given.

The gist of defendant's statement was that he had been riding in his car looking for an appropriate place to rob. He selected the particular liquor store as there was only one person inside. He fully intended to commit the robbery, but during the process he heard the victim say: "You are going to kill me." Defendant through his fuddled mind interpreted this statement as a command to kill the victim, which he did.

There is more. Defendant presented evidence from a state psychiatrist and the medical records from a veteran's hospital and Kansas City jail psychiatrist that defendant suffered from paranoid schizophrenia. The state psychiatrist postulated that the defendant knew or appreciated the nature or quality of the wrongfulness of his act but was incapable of conforming his conduct to the requirements of the law. There was abundant evidence that stemming back from his time in military service he had heard "voices" calling to him to kill someone and that he had interpreted a remark of his victim as a command to kill. But there was no deviation from the evidence that defendant fully intended to commit robbery: he "needed the money."

The issue presented to the jury was whether or not defendant under Chapter 552 was responsible for his conduct in the killing by reason of mental disease or defect. The jury's decision rejected defendant's theory of defense.

Defendant's first point of appeal concerns alleged instructional error.

The jury was instructed on first degree (felony) murder and manslaughter. Its verdict was a finding of guilty of first degree murder. Neither the state nor the defense requested an instruction on second degree murder, but defendant now argues it was plain error for the trial court to fail to submit such an instruction.

■ Plain error regarding instructions occurs when the trial court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice. *State v. Murphy*, 592 S.W.2d 727, 733 (Mo. banc 1979); *State v. Moland*, 626 S.W.2d 368, 370 (Mo.1982). Under the facts of this case we find no instructional error.

Defendant argues that *State v. Donovan*, 631 S.W.2d 39 (Mo.1982) and *State v. Wilkerson*, 616 S.W.2d 829 (Mo. banc 1981)[1] require the submission of second degree murder.

In *Donovan*, the appellant was charged with the first degree murder of the victim who died as a result of forty-eight stab wounds. The indictment charged murder in the first degree in the perpetration of the felony of robbery. At trial, the appellant testified that he declined to participate in robbing the victim. First degree murder and manslaughter were submitted, and a verdict of guilty of first degree murder was returned by the jury. This Court found that the evidence justified instructions on both conventional and felony second degree murder. The judgment was reversed and remanded for failure to instruct on any degree of homicide *justified by the evidence.*

*Donovan* differs from this case in two material respects: (1) the defendant denied participation in the robbery (*i.e.,* the requisite element of first degree murder), and (2)

---

1. At the time of trial, the plurality opinion of *State v. Handley*, 585 S.W.2d 458 (Mo. banc 1979) set out the law with respect to instructing down to second degree murder from a charge of first degree murder and found that submission of second degree murder would be improper from a charge of first degree murder.

On May 11, 1981, this Court decided *Wilkerson*, which essentially overruled *Handley*. *Wilkerson* upheld the submission of second degree murder on a charge of first degree murder as an offense inferior to that charged in the indictment. Sec. 556.220, RSMo 1969 (now repealed).

the instructional error was properly preserved.

MAI–CR2d 15.00, Note 3(e) requires that:

e. Subject to a–c above, if murder in the first degree is the highest homicide submitted, the court must give the following instruction:

MAI–CR 15.18 on conventional manslaughter.

*The court must also give either one or both of the following instructions which are justified by the evidence:*

MAI–CR 15.14 on conventional second degree murder, and

MAI–CR 15.16 on any second degree felony-murder.

(Emphasis added.)

"Justified by the evidence" is defined in MAI–CR2d to mean "that all essential elements of the offense may be found or inferred from the evidence." *See* MAI–CR2d 15.00, Note 3(b).

The evidence demonstrated, and defendant admitted, that in the process of robbing the liquor store, he shot and killed the victim. At trial, he did not deny but fully supported those facts. That was the first part of the theory of his defense: that he intended to commit robbery and in its commission killed the victim. The second segment of the defense was that mental disease and defect excluded his responsibility for what can only be classified as first degree murder. An instruction on second degree murder could not in any way be "justified by the evidence" as no basis existed for disbelieving defendant's participation in the robbery.

*State v. Olds,* 603 S.W.2d 501, 509 (Mo. banc 1980), speaks precisely to this point: given the law that a killing during a robbery "is not second degree murder or manslaughter but first degree murder, two things may be concluded: An instruction on second degree murder is not 'justified by the evidence,' and the failure to give same is not error. . . ."

It is also recognized that defense counsel frequently make a conscious decision not to request a lesser offense as a matter of trial strategy. The reasoning is that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted. *See State v. Olson,* 636 S.W.2d 318, 322 (Mo. banc 1982).

In this case, the crime was either first degree murder or defendant was not guilty. Defendant admitted each element of the offense but interposed the affirmative defense of mental disease or defect, which the jury did not accept. Manifest injustice did not occur as a result of the failure to instruct on second degree murder. Accordingly, we find no plain error was presented by the facts of this case. Defendant's first point is without merit.

Next, defendant raises as error the trial court's action in overruling his motion for mistrial, or in the alternative, motion to voir dire the jury regarding the attempted assassination of President Reagan.

On March 31, 1981, defense counsel moved for mistrial based on the mass publicity surrounding the assassination attempt which had occurred the day before. The defense further moved to voir dire each juror to determine if any had been prejudiced because of the publicity. The trial judge overruled both motions indicating there was nothing showing any connection between the assassination attempt and the crime for which defendant was on trial.

■ It must first be recognized that both motions made in this case (*i.e.,* motion for mistrial and motion to voir dire the jury) are addressed to the sound discretion of the trial judge. *State v. Lumsden,* 589 S.W.2d 226 (Mo. banc 1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). Accordingly, the exercise of that discretion will be disturbed on appeal only when the record shows a manifest abuse. *Id.* at 229.

■ Mistrial is a drastic remedy, to be granted only with the greatest caution and in extraordinary circumstances. *State v. Gilbert,* 636 S.W.2d 940, 943 (Mo. banc 1982). On the face of the record, it is not at all apparent that the jury would have been prejudiced against defendant because of the

assassination attempt on President Reagan's life, an event totally unrelated to the crime for which defendant was on trial. We can find no abuse of discretion in the court's refusal to grant a mistrial.[2]

Several cases cited by defendant uphold the trial court's refusal to grant a mistrial, e.g., *United States v. Eberhardt,* 417 F.2d 1009, 1014 (4th Cir.1969),[3] *cert. denied,* 397 U.S. 909, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970), *aff'd,* 437 F.2d 750 (1971); *United States ex rel. Victor v. Yeager,* 330 F.Supp. 802 (D.C. N.J.1971);[4] *Moore v. People,* 174 Col. 286, 483 P.2d 1340, 1341 (banc 1971).[5]

Defendant argues that even in those cases in which refusal to grant a mistrial was upheld, the judge either questioned the jurors regarding reactions or admonished them not to allow the assassination to influence the deliberations in the trial at hand. But no case cited mandates that such procedure must be applied. Each found no abuse of discretion in the refusal to grant a mistrial because of other remedial action taken by the judge (*i.e.,* questioning for prejudice or admonishing jury to disregard publicity). However, these cases cannot be read to require voir· dire of the jury under the circumstances of this case. Although such a procedure would have been within the proper exercise of the trial court's discretion, it does not follow that refusal to do so is necessarily an abuse of discretion.

■ A trial court has considerable discretion in control and conduct of voir dire examination of the venire panel; and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion and a real probability of prejudice to the complaining party. *State v. Olinghouse,* 605 S.W.2d 58, 68 (Mo. banc 1980); *State v. Scott,* 515 S.W.2d 524, 527 (Mo.

1974). Under the circumstances existing here, defendant's counsel's unsupported conjecture of prejudice due to the publicity surrounding the attempted assassination of President Reagan is not sufficient to establish a real probability of prejudice to defendant. There is no abuse of discretion apparent on this record.

Finally, defendant contends that the trial court erred in overruling his motion for acquittal filed at the close of the evidence. He contends that there was no sufficient substantial evidence to support the verdict of guilty because all the evidence established that at the time of the murder he was suffering from a mental disease or defect. Essentially, defendant is asking for a finding that he was not guilty by reason of mental disease or defect as a matter of law. This point has been both considered and rejected in prior cases.

Section 552.030.7, RSMo 1978 (current version at § 552.030.7, RSMo Supp.1982), provides in pertinent part:

All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct, whether or not previously adjudicated in this or any other state to be or to have been insane, drunkards, drug addicts, sexual or social psychopaths, or otherwise mentally ill, incompetent, deranged or impaired. *The issue of whether any person had a mental disease or defect excluding responsibility for his conduct is one for the jury to decide upon the introduction of substantial evidence of lack of such responsibility.* But in the absence of such evidence the presumption shall be conclusive. *Upon the introduction of substantial evidence of lack of such responsibility, the presumption shall not disappear and shall*

---

**2.** Matters regarding the type of defense to be raised by the would-be assassin could not have been known to the jury. The attempt had occurred sometime during the first day of defendant's two day trial.

**3.** Dr. Martin Luther King, Jr. assassination during course of trial.

**4.** Senator Robert Kennedy assassination during course of trial. Held: no error in failing to declare mistrial; no apparent juror voir dire conducted.

**5.** Senator Kennedy's assassination. Held: no error in failing to declare mistrial; no apparent juror voir dire.

*alone be sufficient to take that issue to the jury.*

(Emphasis added.)

■■■ Even in the face of substantial expert medical evidence that the accused is suffering from a mental disease or defect excluding responsibility at the time the crime was committed, and absent contradictory or countervailing expert medical evidence offered by the state, the statutory presumption of sanity remains and carries the issue of mental disease or defect excluding responsibility to the trier of fact for resolution. *State v. Bradshaw,* 593 S.W.2d 562, 568 (Mo.App.1979); *State v. West,* 575 S.W.2d 257, 258 (Mo.App.1978). The sanity presumption standing alone is substantial evidence to sustain the jury finding on this issue. *State v. Ginnery,* 617 S.W.2d 117, 120 (Mo.App.1981).

The judgment is affirmed.

RENDLEN, C.J., HIGGINS, J., and HENLEY, Senior Judge, concur.

DONNELLY, J., concurs in result.

WELLIVER, J., dissents in separate opinion filed.

SEILER, Senior Judge, dissents and concurs in dissenting opinion of WELLIVER, J.

BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.

WELLIVER, Judge, dissenting.

I respectfully dissent. In my view appellant was entitled to an instruction on second degree murder as a lesser included offense of first degree murder.

The trial in this case was held after our decision in *State v. Handley,* 585 S.W.2d 458 (Mo. banc 1979), and before our decision in *State v. Wilkerson,* 616 S.W.2d 829 (Mo. banc 1981). The principal opinion in *Handley* held that it was error to instruct the jury on second degree murder under a charge of first degree murder because second degree murder was not a lesser included offense of first degree murder. 585 S.W.2d at 461–63. That opinion, however, did not command a majority of the Court. *Wilkerson* overruled *Handley* to the extent *Handley* held that second degree murder was not a lesser included offense of first degree murder. 616 S.W.2d at 833.[1] In the present case the trial court instructed the jury on the offenses of first degree murder and manslaughter only. Neither the state nor the defense requested an instruction on second degree murder, and nothing in the record indicates that the trial court ever considered giving such an instruction. Appellant now contends that in light of *Wilkerson* and subsequent cases, the trial court committed plain error in failing to instruct the jury on second degree murder. *See* Rule 29.12(b).

If first degree murder is the highest homicide submitted, an instruction must be given on second degree murder if it is "justified by the evidence." MAI–CR2d 15.00 note 3(e). The initial step, therefore, is to determine whether in this case an instruction on second degree murder was "justified by the evidence," which in this context means "that all essential elements of the offense may be found or inferred from the evidence," *id.* note 3(b). Second degree murder has long been defined as "the (1) willful, (2) premeditated, (3) killing (4) of a human being (5) with malice aforethought." *State v. Mannon,* 637 S.W.2d 674, 678 (Mo. banc 1982) (citing *State v. Franco,* 544 S.W.2d 533, 535 (Mo. banc 1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977)). " 'Willful' has often been

---

1. *Wilkerson* held that second degree murder was a lesser included offense of first degree murder under the test set forth in § 556.220, RSMo 1969 (repealed). 616 S.W.2d at 832. The Court also indicated that the same result would obtain under § 556.046, which was effective January 1, 1979, and which governs this case. 616 S.W.2d at 832–33. Although this latter statement was dictum, we have adhered to it and have held, on the basis of *Wilkerson,* that the failure to instruct on second degree murder in a first degree murder case in which the homicide occurred after January 1, 1979, is error if the evidence justifies the instruction. *State v. Donovan,* 631 S.W.2d 39, 41 (Mo.1982).

defined as meaning 'intentionally' or 'knowingly' in connection with a criminal offense." *Id.* Premeditation exists whenever the defendant thinks about the act for any length of time, however short, before he acts. *State v. Bolder,* 635 S.W.2d 673, 680 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). "Malice" means "that condition of the mind which prompts a person intentionally to take the life of another without just cause, justification or excuse," *State v. Lay,* 427 S.W.2d 394, 400 (Mo.1968); *see State v. Wieners,* 66 Mo. 13, 20 (1877), and "malice aforethought" means "with malice and premeditation," *State v. Curtis,* 70 Mo. 594, 598 (1879); *see Hardnett v. State,* 564 S.W.2d 852, 854 (Mo. banc 1978); *State v. Mathis,* 427 S.W.2d 450, 454 (Mo.1968).

The principal opinion argues that an instruction on second degree murder would not have been justified by the evidence. On the record in this case, however, the jury reasonably could have found appellant guilty of second degree murder, for the testimony and evidence adduced would support a finding of each of the elements of that offense. First, appellant admits that he killed a human being. Second, appellant himself testified that on the day this crime occurred he intended to kill another person. The jury could have found from appellant's own testimony that the killing resulted from appellant's own desire to rid himself of the voices by satisfying their demands. It could have found that when Bruns said, "You are going to kill me," appellant of his own volition escorted Bruns to the rear of the store and shot him in the head. From all of these facts the jury could have determined that the killing was willful or intentional and that it was premeditated. Finally, there is no contention, nor could there be, that the homicide was either justifiable or excusable, *see* MAI–CR2d 2.28, 2.41.-1–.46, which would negate malice and, *a fortiori,* malice aforethought.

Because the evidence would support a conviction for second degree murder, the trial court should have instructed the jury on that offense. If the error had been preserved for appellate review, our decision in *State v. Donovan,* 631 S.W.2d 39, 41 (Mo.1982), would compel reversal. This is true even though the trial court may have relied on *Handley,* because any such reliance would have been "misplaced." *Id.* *Donovan,* however, did not consider whether the failure to instruct the jury on second degree murder in this context could ever constitute plain error.

This Court has held that "plain error does not result in connection with instructions unless the court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice." *State v. Murphy,* 592 S.W.2d 727, 733 (Mo. banc 1979). *See* Rule 29.12(b). Under our cases "it is our duty to review the facts and circumstances in each case and to determine that question on a case to case basis." *State v. Sanders,* 541 S.W.2d 530, 533 (Mo. banc 1976). On the facts of this case I am compelled to conclude that manifest injustice resulted from the failure to instruct the jury on second degree murder. The evidence in this case would amply support a conviction for that offense. On this state of the record, the great disparity between the punishments authorized for manslaughter and first degree murder demands that the jury be afforded the opportunity to consider second degree murder as one alternative. In *State v. Smith,* 598 S.W.2d 118 (Mo.1980), the trial court instructed the jury on both first and second degree murder but failed to instruct on manslaughter. The Court there found no plain error, because

> [u]nder the specific language of the instructions the jury was given the option to exercise leniency by convicting appellant of murder in the second degree, but it declined to do so. There is no reason to assume that if a manslaughter instruction had been given the jury would have availed itself of the manslaughter option, which would have called for even greater leniency.

*Id.* at 120–21. The present case presents the opposite situation, in which there is a hiatus between the two possible sentences the jury was authorized by the instructions

to impose. Ten years is the maximum punishment for manslaughter, § 565.031, and life imprisonment is mandated for first degree murder, § 565.008(2). If the jury thought the sentence for manslaughter too lenient, its only other choice was life imprisonment. The jury might well have believed it appropriate to convict appellant of second degree murder and impose a sentence somewhere between ten years and life, *see id.,* but that option was foreclosed.

The principal opinion relies on *State v. Olds,* 603 S.W.2d 501 (Mo. banc 1980), but that decision is not helpful here. In that case the Court found that the evidence involved an all-or-nothing proposition: Olds "was to be either acquitted of the charged killing on the basis of his alibi defense or found guilty of first degree kidnap-murder" because "under the evidence . . . the jury could find felony-murder as submitted but not a homicide requiring a lesser mental state." *Id.* at 509. In *Olds,* therefore, there was no need to instruct the jury on lesser homicides. This is not such a case. The evidence here does not present "irreconcilable versions" of an incident that "leave no room for a middle ground." *State v. Story,* 646 S.W.2d 68, 73 (Mo. banc 1983). The verdict would have been fully supported by the evidence had the jury found appellant guilty under an instruction on second degree murder, and we would have upheld such a verdict against a challenge to the sufficiency of the evidence. With this in mind, fundamental principles of justice dictate that in this case the jury should have been instructed on second degree murder. Criminal justice must be consistent if the system is to maintain credibility.

In this case the failure to instruct the jury on second degree murder "so . . . failed to instruct the jury on the law of the case as to cause manifest injustice." *Murphy,* 592 S.W.2d at 733. The judgment should be reversed, and the case should be remanded for a new trial.