STATE of Missouri Plaintiff–
Respondent,

v.

James R. CASTILLO, Defendant–
Appellant.

James CASTILLO Movant,

v.

STATE of Missouri, Respondent.

Nos. 60801, 62083.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 11, 1993.

Brad B. Baker, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Appellant, James Castillo appeals his conviction of first degree robbery and armed criminal action. Appellant also filed a notice of appeal of the denial of his motion under Rule 29.15. The appeals were consolidated. Appellant has failed to file a brief on the issues pertaining to his Rule 29.15 motion. An appellant who fails to file a brief, we deem, abandons his appeal. *Estate of Welch*, 797 S.W.2d 742, 743 (Mo.App.1990). Appellant makes five contentions for reversal of his conviction: (1) the trial court erred in denying appellant's motion for sanctions against the state for alleged violation of Rule 25.03 V.A.M.R., (2) the trial court erred in overruling appellant's objection to the state's closing argument, (3) the trial court erred when it refused to submit a lesser included offense instruction to the jury, (4) the state did not prove every element of the crime beyond a reasonable doubt, and (5) the Missouri Approved Instruction definition of "Reasonable Doubt" was in violation of Due Process. We find all of these contentions without merit and affirm the trial court's decision.

Viewing the evidence in a light most favorable to the verdict the following facts were adduced at trial. The appellant, James Castillo intended to drive to California with Kim Vermillon, a fourteen year old runaway, and another minor female runaway. Appellant did not own a car but did agree to procure an automobile and drive the group to California. In furtherance of this plan appellant went to the Fairlanes Bowling Alley to look for someone who would pick him up. While sitting in the entrance area of the bowling alley appellant met the victim, David Biggs. The two men made eye contact. The appellant continued to stare at Biggs while Biggs entered the building. Biggs, a bisexual, winked at the appellant.

Approximately one hour later Biggs left the bowling alley and returned to his car. Appellant approached the driver's side window of Biggs' car and asked for a ride. Biggs assented and the appellant entered the car. Biggs drove away from the bowling alley and asked appellant where he wanted to go. Appellant responded that he wanted to party and have a good time. Biggs repeated the same question several more times and received the same response from appellant that he wanted to party and have a good time. Biggs then told appellant he was going home to watch television and that appellant was welcome to come.

Appellant and Biggs went to Biggs' home where they began watching TV. Approximately one hour later the two men began watching an x-rated movie. During the movie appellant indicated that he was interested in performing some of the sexual acts that were being performed in the movie. After hearing appellant's comment Biggs put his hand on appellant's knee, then crotch. Biggs then removed his hand. Shortly after, appellant jumped onto Biggs' legs, pinned his arms to the couch, and told him that he was under arrest for homosexuality. Biggs pushed appellant off him and started for the front door. Appellant tripped Biggs and handcuffed him behind his back. Appellant then hit Biggs in the head with a socket wrench causing the victim to fall face down onto the floor bleeding profusely. Appellant threatened to strike Biggs again if he tried to move.

Appellant searched Biggs' home looking for drugs. After finding no drugs appellant took approximately $335 from Biggs' wallet which was in his pants pocket. In the span of several minutes appellant kicked Biggs down the basement stairs, ran a knife across Biggs' throat and threatened to cut his throat, beat him in the head with the socket wrench again, duct taped his eyes and mouth closed, and finally duct taped his ankles to the water heater. Appellant returned upstairs, took Biggs' car keys, a case of pepsi, and a coin jar, full of change. Appellant then stole Biggs' car, picked up Kim Vermillon, and drove to California. While passing through Texas appellant told Vermillon that he had beat up a fag, stolen his car, and left the fag for dead.

Point I of appellant's argument claims that the state violated Rule 25.03 V.A.M.R. and the trial court erred in denying appellant's motion for sanctions. Appellant claims that the introduction of a statement made by Kim Vermillon to juvenile authorities that appellant told her that he, "tried to kill the fag," at trial and the introduction of statements made by the appellant to the victim, "must be a strong person, everybody else he hit like that passes out," at trial violated Rule 25.03 and sanctions should have been allowed. We hold that the state did not violate Rule 25.03 and that the appellant was not prejudiced by the admittance of the above statements.

■ The purpose of the discovery rules are to enable a defendant to adequately prepare for trial. *State v. Adams*, 791 S.W.2d 873, 878 (Mo.App.1990). The question of the remedy for violation of a discovery rule lies within the sound discretion of the court. *State v. Kilgore*, 771 S.W.2d 57, 66 (Mo. banc 1989), *cert denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). A trial court's denial of a requested sanction, such as the exclusion of a witness's testimony, is an abuse of discretion only where the admission of evidence or testimony results in a fundamental unfairness to the defendant. *Id.*, quoting *State v. Royal*, 610 S.W.2d 946, 947 (Mo. banc 1981). *See also State v. Robinson*, 832 S.W.2d 941, 945 (Mo.App.1992). The notion of fundamental unfairness in turn is to be measured by whether the evidence or the discovery thereof would have affected the result of the trial. *Id.*

■ The facts indicate that the state complied with Rule 25.03 and that appellant did not suffer the requisite amount of prejudice so as to show an abuse of discretion by the trial court. Kim Vermillon's statement was made to juvenile authorities upon returning from California. This statement was not discovered by the state until four days before trial. Immediately upon learning of the existence of the statement the prosecutor telephoned appellant's counsel and informed him of the existence and substance of the statement. The prosecutor then, immediately after gaining possession, faxed a copy of the statement to appellant's counsel. Appellant's counsel received a copy of the statement three days before trial.

Appellant argues that the case is analogous to *State v. Varner*, 837 S.W.2d 44 (Mo.App.1992), where the court reversed and remanded the case for a new trial based on a discovery violation. However, appellant's analysis is incorrect for *Varner* factually does not apply. *Varner* involved the arrest of a man for stealing merchandise from a Famous Barr department store. The defendant, when caught by a store security guard, had given an alias. The security guard noted in his report to Famous Barr that the man had used an alias. However, the prosecution did not discover that fact until the eve of trial and did not inform the defendant's counsel of the alias until the morning of trial. This court found that the state had endorsed the security guard and that a reasonable inquiry by the state would have uncovered the report and made it discoverable by the defendant. *Id.* at 45. The court further held that since appellant's counsel had no other way of knowing that his client had given the security guard a false name prior to the morning of trial he had been prejudiced by the state's failure to discover the report. *Id.* at 46.

The facts of Mr. Castillo's case are not analogous to those of *Varner*. In this case appellant's counsel received notice of the existence and substance of the statement and then actual possession of the statement four and three days before trial, respectively. This is a much greater amount of time than in *Varner* where discovery was not made until the morning of trial. The facts also indicate that Vermillon's statement to the juvenile authorities was wholly separate from the police records of appellant's robbery of Biggs. Vermillon's statement to the juvenile authorities was far more attenuated than the report of the apprehending security guard in *Varner*. It should also be noted that one month prior to trial, at appellant's deposition of Vermillon, appellant had the opportunity and did learn the substance of Vermillon's statement. At this deposition Vermillon stated to appellant's counsel that appellant had told her that Castillo had tried to suffocate his victim. The substance of the statement from the deposition is the same as the statement in controversy for they both show that the appellant tried to kill the victim. The facts indicate that appellant had knowledge of the substance of Vermillon's statement and an adequate amount of time to prepare.

█ The appellant further failed to establish he had suffered a prejudice which amounted to a fundamental unfairness because appellant failed to show that earlier discovery of Vermillon's statement would have altered the result of the trial. In addition to the fact that the appellant had prior knowledge of the substance of the statement and adequate time to prepare for trial the use of the statement would not have altered the results of the trial. Appellant claimed that the state offered Vermillon's statement to establish consciousness of guilt and state of mind of the appellant. Such a use is irrelevant to the conviction of Robbery in the First degree. The elements of that crime do not require a finding of intent to kill the victim in order to convict the appellant. *See* 569.020 RSMo 1986.

█ The admittance of David Biggs' statement that appellant told Biggs that he, "must be a strong person, everybody else he hit like that passes out," was also not an abuse of discretion for the appellant has not shown he has been caused any prejudice. The facts indicate that appellant was given this statement, by the state, as soon as it was discovered that the appellant had not learned of the statement during appellant's deposition of Biggs. Appellant received the statement three days before trial. Appellant also stated at the pre-trial conference of the state's alleged discovery violations that he was not concerned about Mr. Biggs. At trial appellant made no objection to Biggs' testimony to the above statement. Due to appellant's failure to object in any way to the use of the statement at trial and the fact that it was produced for appellant by the state in good faith and three days prior to trial we find the appellant has suffered no prejudice from this statement.

█ Point II of appellant's argument contends that the trial court erred in overruling appellant's objection to the state's closing argument. Appellant claims the following statements by the prosecutor during closing argument violated appellant's right to a fair trial:

> Ms. Moriarty: Ladies and gentlemen, the only one you should be disgusted with is Mr. Butler [defense counsel] and his client the way he victimized these two witnesses on the stand yesterday, it was horrible, they were victimized because they came forward. Why does Mr. _____ he states they have contradicting stories. Think about David Biggs, about who he is, about what he had to do to come here to tell you what happened. He had to tell you one of his most personal things.

----------

> Ms. Moriarty: James Castillo [appellant] asked David Biggs for a ride, David Biggs comes in and says the same thing and that's the words out of his mouth to Kim Vermillon, why would she lie to take the abuse of Mr. Butler on the stand?

She has no reason to lie. She came forward.

The record indicates that the above statement's were made in retaliation to attacks by appellant's counsel as to the credibility of the state's witnesses. In appellant's closing argument appellant's counsel stated, "you have a right to be disgusted with what you have heard from Mr. Biggs. . . ." We hold that the trial court did not abuse its discretion in overruling appellant's objection to the state's closing argument.

■ The trial court has wide discretion in controlling the scope of closing argument and determining what constituted impermissible references and it is the trial judge who occupies the best position to observe the effect of contested statements on the jury. *State v. Parkus*, 753 S.W.2d 881, 885 (Mo. banc 1988). Unless that discretion is clearly abused to the prejudice of the accused, the trial court's rulings on such issues should not be disturbed on appeal. *State v. Vitale*, 801 S.W.2d 451, 457 (Mo.App.1990). To find an abuse of discretion the prosecutor's statement must be clearly unwarranted. *Id.*

■ In this case the prosecution's closing remarks were not clearly unwarranted for the statements were made in retaliation to appellant's counsel's attack on the credibility of the state's witnesses. By attacking the credibility of the state's witnesses defense counsel invited a response from the state. The prosecutor may go further by way of retaliation in answering the argument of defense counsel than would be permitted in the first instance. *State v. Murphy*, 739 S.W.2d 565, 570 (Mo.App. 1987). It is permissible for the prosecutor to retaliate in regard to an issue raised by an accused's argument. *State v. Allen*, 710 S.W.2d 912, 917 (Mo.App.1986).

The appellant relies on *State v. Greene*, 820 S.W.2d 345 (Mo.App.1991) in support of its argument that the trial court abused its discretion and that the state's remarks were designed to degrade appellant's counsel. In *Greene* the prosecutor, in closing argument, accused defense counsel of lying to or misleading the jury. *Id.* at 347. This allegation was made without any evidence

to support it. *Id.* The *Greene* court found that the unsupported accusation that defense counsel was lying was, "so serious and potentially prejudicial that it might have affected the juror's deliberation." *Id.* However, in the present case the prosecution made no accusation even amounting to an inference that defense counsel had intentionally lied to or mislead the jury. In fact, the defense counsel's veracity was never brought into question. Appellant has incorrectly relied on *Greene.*

Appellant also relies on *Newlon v. Armontrout*, 885 F.2d 1328 (11th Cir.1985), arguing that the prosecutor's remarks, in closing arguments, so mischaracterized the judicial process and personalized the case to the jury that appellant could not have received a fair trial. Again, appellant's analysis is incorrect for *Newlon* is easily distinguished. In *Newlon* the appellate court affirmed the federal district court's ruling that prosecutor's argument during the penalty phase of Newton's trial was improper. The improper remarks were statements in which the prosecutor: (1) expressed his personal belief in the propriety of the death sentence, (2) emphasized his position of authority as prosecuting authority, (3) attempted to link defendant with several well known mass murderers, (4) appealed to jurors personal fears and emotions, and (5) asked the jurors to, "kill him now. Kill him now."

The record of the present case shows no similarities between the contested remarks of the prosecution, as stated earlier in this opinion, and those of *Newlon.* The state's remarks were in retaliation to previous remarks made by defense counsel attacking the credibility of the state's witnesses, not at appellant, as in *Newlon.* Further, the state's remarks, when compared to those in *Newlon*, were not nearly as inflammatory. The *Newlon* court also based its decision on the special provisions of the Eighth and Fourteenth Amendments for death sentences. *Id.* at 1337. We hold that the trial court did not abuse its discretion for the prosecution's remarks were in retaliation to an issue the appellant had raised.

■ In Point III appellant asserts that the trial court erred in refusing to submit his proffered. instruction on the lesser included offense of felony stealing because he alleges that he did not have the requisite intent to commit robbery in the first degree. Appellant claims that he committed a stealing only after defending himself from Biggs' sexual advances. However, the facts, taken most favorably to the verdict, do not support appellant's contention.

■ To support the giving of an instruction on a lesser included offense, the record must contain substantial evidence to support both an acquittal on the most serious charge, and a conviction on the lesser charge. *State v. Jolly,* 820 S.W.2d 734, 735 (Mo.App.1991), citing *State v. Stepter,* 794 S.W.2d 649, 652 (Mo. banc 1990). Where, as in this case, there is strong and substantial proof of defendant's guilt of the offense charged and the evidence does not reveal a lack of an essential element of the more serious offense, an instruction on the lesser included offense is not necessary. *State v. Montgomery,* 809 S.W.2d 47, 49 (Mo.App.1991).

The facts reveal that in the process of taking the victim's money and car appellant handcuffed and tripped Biggs, beat him in the head twice with a socket wrench causing him to bleed profusely, kicked the victim down the basement stairs, ran a knife along Biggs' throat while threatening to cut his throat, duct taped his eyes and mouth shut, and then duct taped the victim's ankles to the hot water heater in the basement. We do not accept appellant's contention that he only used physical force to defend himself from Biggs' sexual advances and not to rob him. The record indicates that there is strong and substantial proof of the convicted charge of robbery in the first degree and that every element of the offense of conviction was established. Thus, the trial court did not abuse its discretion in rejecting appellant's submitted instruction for the lesser included offense of felony stealing.

In addition, appellant was not prejudiced by the trial court's refusal to submit the lesser included offense instruction. A second degree robbery instruction was submitted to the jury but the jury found the appellant guilty of robbery in the first degree and declined to convict him of the lesser offense. Thus the jury did not take the first step in reducing the offense to second degree robbery. There appears to be no reasonable basis to suggest that the jury would have exercised greater leniency. *See State v. Meritt,* 734 S.W.2d 926, 932 (Mo.App.1987), citing *State v. Smith,* 598 S.W.2d 118, 120, 121 (Mo.1980).

In point IV of appellant's appeal he contends the trial court erred when it refused appellant's motion for acquittal on the charge of first degree robbery. Appellant argues the state's evidence was insufficient to show appellant used physical force when he stole Biggs' automobile and money. Thus the state has not proved every element of the crime beyond a reasonable doubt.

In assessing a challenge to the sufficiency of the evidence, the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored. *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc 1991). This court will look only to whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Nelson,* 818 S.W.2d 285, 288 (Mo.App. 1991). Inquiries into the credibility of the witnesses and the effects of conflict or inconsistencies in the testimony of any witness are questions for the jury. *Id.*

■ Appellant's argument is without merit for the facts, as viewed in a light most favorable to the conviction, clearly established that the state proved beyond a reasonable doubt that the appellant used physical force when he robbed Biggs. Appellant tripped and handcuffed the victim, struck the victim in the head with a socket wrench causing him to bleed profusely, kicked Biggs down the basement stairs, ran a knife along Biggs' throat and threatened to cut his throat, hit him in the head with the socket wrench a second time, duct taped the victim's eyes and mouth closed,

and then duct taped the victim's ankles to the hot water heater in the basement. We believe this to be sufficient evidence of the use of physical force from which reasonable people could have found the appellant guilty of robbery in the first degree.

Appellant finally argues in point V that the trial court plainly erred in submitting Instruction No. 4 patterned after MAI–CR 302.04. He asserts it is unconstitutional because it defines "reasonable doubt" as "firmly convinced." We deny this point pursuant to *State v. Griffin,* 848 S.W.2d 464, 467 (Mo.1993).

Judgment affirmed.

CRANDALL, P.J., and GRIMM, J., concur.